'Chief Justice Bibb
delivered the Opinion of the Court.
The circumstances insisted bn by answer, and established by the proofs, present strong claims in equity, to compel Hogan to accept the title to the land purchased, and to pay the perchase money; if the defendants were in a situation -to convey the title, as supposed by the decree, below.
Boundaries of land on the Kentucky River.
These words in a deed for taining 750" acres” held to be but a ° e
The claim of Myers is no obstacle; it was a claim by a land office warrant, issued long after the d'd*3 of the patent, to the heirs of Samuel Grant. patent of Grant’s heirs is bounded by the Kentucky river; it extends to low water, and in-eludes the lower landing on the south side of the river, as contemplated in the contract. The attempt of Myers and assignees to come in between the river and Grant’s patent, on the south side of the Kentucky, and so to take the ferry landing, is without color of right. Moreover, that claim; groundless as it was, is extinguished and quieted, by the decree in that behalf
The supposed deficit in quantity, in the bill suggestee!, is no Obstacle. The patent to Grant’s heirs, js for seven hundred and twenty-three acres by sur~ vCyi the bond of M’Murtry to Hogan, uses the expression, (In reference to the certain tract sold, and including the ferry landing next below the mouth of Hickman,) “containing by survey, 750 acres.” This is but description. The tract of land so sold, was well known to Hogan, it had been purchased by M’Murtry in the first instance, at the request and solicitation of Hogan, who was to have paid to M’Murtry, the price given by him to Josiah Pitts, according to his purchase of the 11th of May, 1812. But Hogan did not pay the purchase, and refused to take the land, after M’Murtry had sd purchased for him. Hogan was present and cognizant of the purchase made by M’Mürtry of Pitts, and of the assignment by him to M’Murtry; of the bond of P. Mason and Elijah Grant to Pitts, in which the tract of land is described, as including the ferry just below the mouth of Hickman, on the south side of Kentucky river, “supposed to contain about five hundred acres, more or less, which land we derived as heirs of Samuel Grant.” The description used in the bond from M’Murtry to Hogan, of this tract, as containing seven hundred and fifty acres, Hogan acknowledged to have been inserted by mistake.
But the heirs of M’Murtry, clo nót show a. title clearly derived under the patent of Grant’s heirs. *183 The deed from. Mason and wife, and Elijah Grant and wife, to the heirs of M’Murtry, of the 4th of April, 1816; does not, for any thing appearing in this cause, convey the title to M’Murtry’s heirs un» der the patent to Grant’s heirs; and that deed is not properly .certified, so as to pass the estate of Mrs. Mason, one of the heirs of Grant.
Decree for specific performance reversed for de. feet of vendor’s title.
On reversing the decree for specific performance, rendered on purchasers, bill, asking that, if good title shall appear, otherwise a rescission, cli» reotions given for the defendants to have leave to introduce other parties,- and make out their title.
r For want of derivation of title from Graft’s heirs to M’Murtry’s heirs, the decree compelling Hogan to accept a deed from the heirs of M’Murtry, is erroneous; such a deed cannot be taken, (according to the proofs and exhibits in this cause,) as a sufficient compliance with M’Murtry’s bpnd to Hogan, of the 31st of August, 1814. For this cause the decree must be reversed.
flogan induced M’Murtry to purchase the land, in his own name, hut for Hogan; under a promise on the part of Hogan, to pay to M’Murtry the price. Hogan owned the ferry at the mouth of Hickman, and wanted to get the ferry at the lower landing about a mile below; fearing that an attempt by him to purchase, might enhance the price, he applied to M’Murtry to purchase for hjm; Plogan went with him to Pitts; M’Murtry contracted with Pitts, Hogan witnessing the contract. Afterwards Hogan would not take the land so purchased by his agent, and threw it on his hands; this purchase was made on the 11th May, 1812, at the price of eight hundred dollars. M’Murtry afterwards, on the 31st of August, 1,814, sold to Hogan at the price of six hundred dollars; which remains unpaid, and the judgment at law was stayed by the injunction obtained, by’ the complainant Hogan, in this cause. Hogan expresses a willingness to take tbe title, if it can he made, and so made, as to secure the lower ferry landing, and his bill is to enforce rather than to rescind. Under these peculiar circumstances, it does not seem to he going too far, to permit the heirs of M’Murtry, (if they shall desire it,) to amend their answer, and bring Grant’s heirs before the court, so as to , complete their title under that patent if they can. This does not seem to be dealing harshly with a complainant, who asks the aid of a court of equity *184 to relieve him against a judgment at law. He apt pears before the court under the circumstances detailed, and to refuse to rescind the contract, until M’Murtry’s heirs shall have a reasonable time to amend, (if they can,) a defect in their title, which arises, (as is probable,) from a slip of the,clerk in taking or in certifying the acknowledgment of the wife of Mason, to the deed of April, 1816, seems to be more equitable than to order -the contract to be rescinded, upon the reversal of the decree made below.
Chittenden, for plaintiff; Chinn, for defendants.-
It is therefore ordered and decreed, that the decree of the circuit court be reversed; that the cause be remanded to the said court, with liberty to the defendants, the heirs of M’Murtry, to amend their*answer, and bring new parties before the court, if leave be applied for in a reasonable time, and for such farther proceedings herein, as the principies .and usages of equity shall require.
The plaintiff in this court to have his costs.